The facts in this case as found by Judge JANVIER are as follows:
"Plaintiff, on October 21st, 1942, filed this suit against Mrs. C.B. Love under the provisions of the Emergency Price Control Act of 1942, 50 U.S.C.A. Sec. 901 et seq. (appendix) and the Maximum Rent Regulation #45 issued under the said Act by the Price Control Administrator. Plaintiff alleges that, at sometime prior to September 1st, 1942, defendant leased to him certain living quarters to be used by himself and his wife, which quarters were known as Apartment #12 of the Roserita Apartments, situated at 3218 St. Charles Avenue in New Orleans, and that he and his wife commenced to occupy the said apartment on September 1st, 1942, and were still occupying it at the time of the filing of this suit. Plaintiff also alleges that in accordance with the lease agreement he paid for the apartment $50.00 per month, in advance, and that, at the time of the filing of the suit, he had paid rent at $50.00 per month for the months of September and October, 1942.
"Petitioner also alleges that he is informed and believes that on March 1st, 1942, the same apartment had been rented by the said defendant to another tenant at the rate of $42.50 per month; that the said apartment is situated in the New Orleans Defense Rental Area as provided by Regulation #45, issued under the authority of the Emergency Price Control Act of 1942 (Public Law 421 of the 77th Congress) and that, since under the said regulation the said owner was prohibited from charging for the said apartment rent at a rate in excess of that at which the apartment was rented on March 1st, 1942, defendant has violated the said regulation and the said statute under which it was issued and has thus made herself liable to plaintiff for either three times the damage sustained or $50.00, whichever is greater and that, consequently, defendant is liable to him in the sum of $50.00 together with a reasonable attorney's fee and costs.
"Defendant filed an exception to the jurisdiction of the court ratione materiae and further exceptions in which she made the following charge:
"`that the act and the orders under said Act relied upon by the plaintiff is in violation of Clause 3, Section 9, Article 1 of the United States Constitution, in violation of Amendment 5 of the United States Constitution, and in violation of Amendment 14 of the United States Constitution.' *Page 721 
"Defendant also filed an answer in which she admitted the ownership of the apartment in question and that it had been leased to plaintiff and was being occupied by him and his wife as alleged, and that the monthly rental stipulated for was $50.00. Defendant, without specifically admitting that the monthly rent charged for the apartment on March 1st, 1942, was $42.50 per month, denied that the charge of $50.00 per month made to plaintiff was in violation of the Emergency Price Control Act or of Regulation 45 issued thereunder, and averred `that Emergency Price Control Act of 1942, and all orders thereunder, are unconstitutional and in violation of the United States Constitution, and particularly of Clause 3, Section 9, Article 1 thereof, as well as Amendment 5 thereof, and as well as Amendment 14 thereof'.
"The plea to the jurisdiction and the exception were both overruled and, after a trial on the merits, there was judgment for plaintiff for $50.00 damages and for an attorney's fee which the Court fixed at $25.00 and for costs. Defendant has appealed and plaintiff has answered the appeal asking that the amount allowed as an attorney's fee be increased to $100.00.
"Since the amount in dispute is less than $100.00, when the appeal was lodged in this Court the matter was assigned for trial de novo before only one member of the Court. When it came up for trial before me I realized that the legal questions involved are of great general interest and importance and concluded it to be advisable that the decision on those legal questions be made by the court en banc. Accordingly, I concluded to refer those legal questions to the entire court but to hear the evidence myself and to make a finding of fact on which the Court might base its opinion on the questions of law.
"The plaintiff and several other witnesses testified that the identical apartment which had been leased to plaintiff at $50.00 per month had, on March 1st, 1942, and at other times since March 1st, 1942, been rented for $42.50 per month and several receipts showing that the amounts paid had been $42.50 per month were introduced in evidence. These witnesses, however, did admit that they did not know Mrs. Love, the defendant, and had carried on negotiations and paid rent to Miss Norma Coulon, a sister of the defendant. Mrs. Love did not testify, it being stipulated that because of illness she could not appear in Court, but counsel agreed that if she had appeared she would have testified that on January 1, 1942, she had made a general raise of rents throughout the apartment building of apartments that were not under written lease, and that she would also have testified that there was posted in the office a notice to the effect that no receipts would be recognized unless signed by her, and that she would also testify that if those persons who occupied the apartment on March 1st, had paid only $42.50 per month, that that charge was made in error by her sister, Miss Coulon.
"There was no corroboration of the statements which would have been made by Mrs. Love and it is unbelievable that she had made a general raise in rent, and had posted a notice that no receipts except those issued by herself would be recognized. All receipts issued seem to have been signed by Miss Coulon and no rent was raised on January 1st, so far as the record shows. I do not believe that any such order was issued. I believe that Miss Coulon, defendant's sister, was in full charge of the apartments and that defendant can not now be heard to say that the fact that only $42.50 per month was paid on March 1st, 1942, for this apartment, was the result of error on the part of her sister.
"There is one further fact that has not yet been mentioned and that is that no application was made to the Rent Administrator for the right to make a change in the rent charged for the apartment.
"On this finding of fact I now refer the matter to the entire court for consideration of the legal questions".
The legal questions presented by this appeal are concerned with an exception to the jurisdiction ratione materiae of the First City Court, in which the suit originated and an attack upon the constitutionality of the Emergency Price Control Act upon the ground that it violates Clause 3, Section 9, of Article 1 of the Constitution of the United States relative to ex post facto laws and amendments 5 and 14.
Section 205 (c) of the Emergency Price Control Act of 1942, 50 U.S.C.A.Appendix, § 925 (c), provides as follows:
"The district courts shall have jurisdiction of criminal proceedings for violations of section 4 of this Act, and, concurrently with State and Territorial courts, of all other proceedings under section 205 of this Act. * * *" *Page 722 
Paragraph (e) of the same section deals with the right to sue for treble damages or $50, whichever is greater, and includes the following:
"* * * Any suit or action under this subsection may be brought in any court of competent jurisdiction, and shall be instituted within one year after delivery is completed or rent is paid. * * *"
The argument on the question of jurisdiction is to the effect that the Emergency Price Control Act imposes a penalty (treble damages) which the State Courts have no authority to enforce and, consequently, that since Amendment 7 of the Constitution of the United States guarantees to every individual the right of a trial by jury when the amount involved exceeds the sum of $20 and no provision exists for a jury trial in the First City Court, the issue cannot be determined there in conformity with the constitutional amendment referred to.
Concerning the contention that the Act of Congress under consideration imposes a penalty, the argument is wholly without merit, since it has been held numerous times that this act and other similar acts such as the antimonopoly statute with its triple damage provision and the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq., are not penal statutes.
In Forsyth v. Central Foundry Company, 240 Ala. 277,198 So. 706, the Supreme Court of Alabama held that a suit under the Fair Labor Standards Act of 1938 for overtime wages, attorneys' fees, etc., was not a suit to recover a penalty.
See also Tapp v. Price Brass Co., 177 Tenn. 189,147 S.W.2d 107; Overnight Motor Transportation Company, Inc., v. Missel,316 U.S. 572, 62 S.Ct. 1216, 86 L.Ed. 1682; Stringer v. Griffin Grocery Co., Tex. Civ.App., 149 S.W.2d 158, 161.
From the last mentioned case we quote the following:
"A statute is not penal, merely because it awards punative liquidated damages to a party aggrieved as the measure of liability of the wrongdoer, so as to confer exclusive jurisdiction on the Federal court. If, however, it can be said that the Act of Congress awards a penalty to the parties aggrieved and specifies the remedy for its enforcement in a court of competent jurisdiction, as in a civil action, it may be enforced in a state court. Claflin v. Houseman, 93 U.S. 130, 23 L.Ed. 833; Pennsylvania-Dixie Cement Corp. v. H. Wales Lines Co.,119 Conn. 603, 178 A. 659; 15 C.J. 1159 Note 30, 21 C.J.S., Courts, § 526; Campbell v. Superior Decalcominia Co., Inc., D.C.Tex., 31 F. Supp. 663; Robertson v. Argus Hosiery Mills, D.C.Tenn., 32 F. Supp. 19. It is therefore the right of the employe to prosecute his suit in any court of competent jurisdiction, Federal, Territorial, or State, and when once attached, the right may be asserted in that court, although other courts may also have jurisdiction of the cause."
In Huntington v. Attrill, 1892, 146 U.S. 657, 13 S.Ct. 224, 227, 36 L.Ed. 1123, we find:
"Penal laws, strictly and properly, are those imposing punishment for an offense committed against the state, and which, by the English and American constitutions, the executive of the state has the power to pardon. Statutes giving a private action against the wrongdoer are sometimes spoken of as penal in their nature, but in such cases it has been pointed out that neither the liability imposed nor the remedy given is strictly penal."
In Pratt v. Hollenbeck, 7 O.P.A. 622:76 (Penn.) it was said:
"In Anglo-American legal history there have been numerous statutes authorizing recovery of the type here involved. In Cox v. Lykes Bros., 1927, 237 N.Y. 376, 143 N.E. 226, Justice Cardozo, then Chief of the New York Court of Appeals, held that a suit under the Federal Seaman's Act [46 U.S.C.A. § 596], which provided that seamen whose wages were withheld could recover as wages two days' pay for every one during which payment was withheld, was not a suit to recover a penalty, but was a remedial action properly brought in a New York State Court. Although uninitiated laymen often have a naive belief that the winner of a lawsuit receives full compensation, all lawyers and all courts know this is illusory. Where small sums are involved, the double and treble damage feature is merely one way of attempting to render full restitution to the injured party for the time, trouble and delays usually attendant in enforcing his rights. So considered, treble damages are remedial in fact as well as in law."
As to the right of trial by jury said to have been conferred by Amendment 7 of the Constitution of the United States, it is sufficient to say that this amendment has no application to State Courts. *Page 723 
In Minneapolis St. L.R. Company v. Bombolis, 241 U.S. 211, 36 S.Ct. 595, 596, 60 L.Ed. 961, Ann.Cas. 1916E, 505, L.R.A. 1917A, 86, Chief Justice White said:
"Two propositions as to the operation and effect of the 7th Amendment are as conclusively determined as is that concerning the nature and character of the jury required by that Amendment where applicable. (a) That the first ten Amendments, including, of course, the 7th, are not concerned with state action, and deal only with Federal action. We select from a multitude of cases those which we deem to be leading. Barron v. Baltimore, 7 Pet. 243, 8 L.Ed. 672; Fox v. Ohio, 5 How. 410, 434, 12 L.Ed. 213, 223; Twitchell v. Commonwealth, 7 Wall. 321, 19 L.Ed. 223; Brown v. New Jersey, 175 U.S. 172, 174, 20 S.Ct. 77, 44 L.Ed. 119; Twining v. New Jersey, 211 U.S. 78, 93 [29 S.Ct. 14], 53 L.Ed. 97, 103. And, as a necessary corollary, (b) that the 7th Amendment applies only to proceedings in courts of the United States, and does not in any manner whatever govern or regulate trials by jury in state courts, or the standards which must be applied concerning the same. Livingston v. Moore, 7 Pet. 469, 552, 8 L.Ed. 751, 781; Justices v. Murray, 9 Wall. 274, 19 L.Ed. 658; Edwards v. Elliott, 21 Wall. 532, 22 L.Ed. 487; Walker v. Sauvinet, 92 U.S. 90, 23 L.Ed. 678; Pearson v. Yewdall,95 U.S. 294, 24 L.Ed. 436. So completely and conclusively have both of these principles been settled, so expressly have they been recognized without dissent or question almost from the beginning in the accepted interpretation of the Constitution, in the enactment of laws by Congress and proceedings in the Federal courts, and by state Constitutions and state enactments and proceedings in the state courts, that it is true to say that to concede that they are open to contention would be to grant that nothing whatever had been settled as to the power of state and Federal governments or the authority of state and Federal courts and their mode of procedure from the beginning."
The constitutionality of the Emergency Price Control Act cannot be considered by this or any other State or Federal Court with the exception of the Court of Emergency Appeals subject to review by the United States Supreme Court according to Section 204 (d) of the Act, which reads as follows:
"The Emergency Court of Appeals, and the Supreme Court upon review of judgments and orders of the Emergency Court of Appeals, shall have exclusive jurisdiction to determine the validity of any regulation or order issued under section 2, of any price schedule effective in accordance with the provisions of section 206, and of any provision of any such regulation, order, or price schedule. Except as provided in this section, no court, Federal, State, or Territorial, shall have jurisdiction or power to consider the validity of any such regulation, order, or price schedule, or to stay, restrain, enjoin, or set aside, in whole or in part, any provision of this Act authorizing the issuance of such regulations or orders, or making effective any such price schedule, or any provision of any such regulation, order, or price schedule, or to restrain or enjoin the enforcement of any such provision."
The Supreme Court of Alabama in Kittrell v. Hatter, 243 Ala. 472,10 So.2d 827, 831, referring to the provision of the statute, said:
"The constitutionality of Section 204 (d) rests squarely upon these well established constitutional principles:
"1. A case in which the validity of a federal statute or regulation is called into question is a case or controversy arising under the Constitution or laws of the United States.
"2. Under Article III of the Federal Constitution, the judicial power of the United States extends to all cases or controversies arising under the Constitution or laws thereof.
"3. Congress may withhold from state courts jurisdiction over any matter within the judicial power of the United States. Cohens v. Commonwealth of Virginia, 6 Wheat. 264, 19 U.S. 264, 5 L.Ed 257; Osborn v. Bank of United States, 9 Wheat. 738, 22 U.S. 738, 6 L.Ed. 204; State of Tennessee v. Davis, 100 U.S. 257, 25 L.Ed. 648; Smith v. Kansas City Title Trust Co., 255 U.S. 180, 41 S.Ct. 243, 65 L.Ed. 577; Martin v. Hunter's Lessee, 1 Wheat. 304,14 U.S. 304, 4 L.Ed. 97; The Moses Taylor, 4 Wall. 411,71 U.S. 411, 18 L.Ed. 397; Claflin v. Houseman, 93 U.S. 130, 23 L.Ed. 833; Kalb v. Feuerstein, 308 U.S. 433, 60 S.Ct. 343, 84 L.Ed. 370; Forsyth v. Central Foundry Co., 240 Ala. 277, 198 So. 706. *Page 724 
"These principles furnish the basis for removal of causes presenting a federal question; that is to say, when the correct decision depends on the correct construction of the Constitution or law of the United States. 54 C.J. 231, § 48."
The constitutionality of an act of Congress is, of course, "a case or controversy arising under the Constitution or laws of the United States". It is obvious that the United States may retain exclusive jurisdiction of such controversies. There is also no reason why Congress cannot declare that any part of its judicial power shall be exclusively exercised by a particular Federal Court such as the Court of Claim for example. This is true in times of profound peace, but we are now at war and under the war powers it is all but useless to talk of qualification or limitation upon the powers of Congress. It will be noted that Section 1 of the Emergency Price Control Act provides that "it is hereby declared to be in the interest of the national defense and security and necessary to the effective prosecution of the present war * * *."
In United States v. MacIntosh, 283 U.S. 605, 607, 622, 51 S.Ct. 570, 574, 75 L.Ed. 1302, quoted in the Kittrell case, in speaking of the war powers, it was said:
"From its very nature the war power, when necessity calls for its exercise, tolerates no qualifications or limitations, unless found in the Constitution or in applicable principles of international law. In the words of John Quincy Adams, `This power is tremendous; it is strictly constitutional; but it breaks down every barrier so anxiously erected for the protection of liberty, property and of life.' To the end that war may not result in defeat, freedom of speech may, by act of Congress, be curtailed or denied so that the morale of the people and the spirit of the army may not be broken by seditious utterances; freedom of the press curtailed to preserve our military plans and movements from the knowledge of the enemy; deserters and spies put to death without indictment or trial by jury; ships and supplies requisitioned; property of alien enemies, theretofore under the protection of the Constitution, seized without process and converted to the public use without compensation and without due process of law in the ordinary sense of that term; prices of food and other necessities of life fixed or regulated; railways taken over and operated by the government; and other drastic powers, wholly inadmissible in time of peace, exercised to meet the emergencies of war."
Our conclusion is that the court below had jurisdiction and that the attack upon the constitutionality of the Emergency Price Control Act is without merit.
Plaintiff has answered the appeal asking that the amount of attorney's fees be increased from $25 to $100. We realize that the services rendered in both courts are worth more than the sum awarded, but in view of the amount involved we have concluded not to increase it.
For the reasons assigned the judgment appealed from is affirmed at the cost of appellant.
Affirmed.
McCALEB, J., concurs.